In re Paul A. WERTHEN, Debtor.

Paul A. Werthen, Defendant/Appellant,

v.

Kathleen Werthen, Plaintiff/Appellee.

BAP No. MB 02–004.
Bankruptcy No. 00–15053–WCH.
Adversary No. 00–1540.

United States Bankruptcy Appellate Panel
of the First Circuit.

Sept. 3, 2002.

Victor Bass, Boston, MA, on brief for appellant.

Gary W. Cruickshank, Boston, MA, on brief for appellee.

Before HAINES, DEASY and KORNREICH, United States Bankruptcy Appellate Panel Judges.

## OPINION

HAINES, Bankruptcy Judge.

Chapter 7 debtor Paul A. Werthen appeals from the bankruptcy court's order determining that sums owed to his former spouse, Kathleen Werthen, are nondischargeable alimony or support under Bankruptcy Code § 523(a)(5).[1] He asserts that the court below erred when it found that obligations imposed by the state divorce court were alimony or support notwithstanding their characterization as

---

1. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, ("Bankruptcy Code" or "Code"), 11 U.S.C. § 101, *et seq.*

"property division" in the divorce judgment. He contends that the debts' dischargeability can properly be assayed only under § 523(a)(15) and that the record is sufficiently developed to permit us to determine that they should be discharged under that provision. For the reasons set forth below, we affirm.

## BACKGROUND

### 1. Procedural Background

Paul voluntarily filed for relief under Chapter 7 on June 28, 2000. On October 24, 2000, Kathleen filed an adversary proceeding seeking a determination that the substantial sums Paul owed her under the divorce judgment were excepted from discharge by § 523(a)(5) [2] or, alternatively, by § 523(a)(15). [3] On November 14, 2001, the bankruptcy court entered judgment declaring the obligations at issue nondischargeable as alimony or support per § 523(a)(5). Hearings subsequently convened on Paul's motion for reconsideration, and, following supplemental briefing, the bankruptcy judge reaffirmed his decision by judgment dated January 16, 2002. Paul's timely appeal ensued.

### 2. Factual Background

Paul and Kathleen Werthen were married and lived together from 1982 to August 1995, when they separated. They were divorced by judgment of the Massachusetts Probate and Family Court entered March 7, 2000. The divorce court amended its judgment on May 2, 2000. In the end, Paul exited the marriage with substantial obligations to Kathleen and their four minor children. He was obliged to pay $ 450.00 per week in child support; alimony set at one-third of all future bonuses received from Whitman Tool & Die Company, his employer, a closely-held family corporation; $ 222,-000.00, representing sixty per cent of bonuses he received during the period between separation and divorce; and $ 611,163.20, representing forty percent of the value of Paul's ownership interest in Whitman Tool. It is the latter two obligations, established in the "property division" section of the divorce judgment (but held to be alimony or support by the court below), that are at issue here.

### 3. Jurisdiction

We have jurisdiction to hear appeals from final orders of the bankruptcy court under 28 U.S.C. § 158(a) & (b). The lower court's judgment declaring Paul's obligations to Kathleen nondischargeable is such an order. *See Fleet Data Processing Corp. v. Branch (In re Bank of New Eng-*

---

**2.** Section 523(a)(5) excepts from the Chapter 7 discharge debts:

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .
11 U.S.C. § 523(a)(5).

**3.** Section 523(a)(15) excepts from discharge other divorce related debts (*e.g.*, property settlement obligations) under circumstances where the debtor has the ability to pay them and the balance of hardships between the debtor and the obligee weighs in the obligee's favor.

*land Corp.)*, 218 B.R. 643, 647 (1st Cir. BAP 1998).

### 4. Standard of Review

█ The parameters of appellate scrutiny are well known and easily stated: We review the bankruptcy court's factual findings for clear error. We review its conclusions of law *de novo. See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107–08 (1st Cir.1997); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1310–11 (1st Cir.1993); *see also* Fed. R.Bankr.P. 8013. Critical, however, is which standard is applied to each of the lower court's challenged rulings.

Although Paul takes issue with the bankruptcy judge's application of legal standards, he does not contend that the *wrong standards* were chosen. Importantly, however, he urges us to review *de novo* the lower court's determination that the obligations at issue were alimony or support and, thus, not dischargeable by application of § 523(a)(5). We decline to do so.

█ A bankruptcy court's determination that an obligation constitutes alimony, maintenance, or support within § 523(a)(5)'s ambit is a question of fact:

In deciding whether to characterize an award as maintenance or support the crucial issue is the function the award was intended to serve. This is a question of fact to be decided by the bank-

ruptcy court. We therefore must accept ... the findings of the bankruptcy court on this issue unless they are clearly erroneous.

*Adams v. Zentz*, 963 F.2d 197, 200 (8th Cir.1992) (quotations and citations omitted). *See, e.g., Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 400 (6th Cir.1998); *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir.1998); *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 750 (8th Cir.1995); *O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears v. Perlin (In re Perlin)*, 30 F.3d 39, 40 (6th Cir.1994); *Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2d Cir.1993); *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993). *See also Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 447 (11th Cir.1996) (§ 523(a)(5) requires but a simple inquiry as to whether the obligation at issue can "legitimately be characterized" as support).[4]

█ Our conclusion should come as no surprise to Paul, given the overwhelming weight of authority from the courts of appeal and given that the essential issue is whether, at the time the obligation was created, the parties (or the court imposing judgment) intended that it function as support. *In re Kline*, 65 F.3d at 750 (court's intention); *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984) (parties' intention); *Soforenko v. Soforenko (In re Soforenko)*, 203 B.R. 853, 859 (Bankr.D.Mass.1997) (court's intention). As they are elsewhere, in the context of bankruptcy dischargeabil-

---

4. Of course, the factual determination is controlled by federal law, *Shine v. Shine*, 802 F.2d 583, 588 (1st Cir.1986), and occasions will arise where a court is asked to determine whether a given obligation is within the subsection's reach as a matter of law. *Macy v. Macy*, 114 F.3d 1, 2–3 (1st Cir.1997) (attorneys' fees awarded in efforts to collect alimony, maintenance, or support are within the

discharge exception); *see also, e.g., Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356–57 (5th Cir.1997) (attorneys' fees awarded in paternity/support action nondischargeable); *Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940, 941 (5th Cir.1993) (attorney and guardian ad litem fee awards within discharge exception).

ity disputes, questions of intent are questions of fact. *Groman v. Watman (In re Watman),* 301 F.3d 3, 8 (1st Cir.2002) (addressing fraudulent intent under § 727); *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997) (addressing fraudulent intent under § 523(a)(2)(A)).

■ A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." *In re Watman,* 301 F.3d at 8 (*quoting Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (internal quotation marks omitted)).

With that said, we turn to the record before us.

### DISCUSSION

#### 1. *The Obligations at Issue*

The obligations at issue in this case were created by the Massachusetts Probate and Family Court's Judgment dated March 7, 2000 ("Judgment"), as amended by its order of May 2, 2000 ("Amendment"), and as illuminated by its Memorandum of Decision and Order, also dated May 2, 2000 ("Divorce Court Decision"). *See* Appellant's Appendix at Tab A. They show, as the bankruptcy court found, that Paul and Kathleen had been married for thirteen years before they separated in 1995. Divorce Court Decision at 1. They had four children, all of whom were minors at the time of divorce. *Id.* Paul had been, and at divorce remained, the family's primary wage earner, working full-time (and then some) at his family's closely-held business. *Id.* at 2.

In the divorce court's words, the Werthens were a "middle-to-high" income fam-

ily, enjoying a "comfortable lifestyle" and attending "elegant dinner parties, and similar social activities" relating to Paul's family's business. *Id.* Paul provided Kathleen a "tight" allowance of $120.00 per week with which she was to purchase groceries and gasoline for her car. *Id.* She had no credit cards. *Id.* Paul controlled all the family finances. *Id.* After the children's infancies, Kathleen secured seasonal, part-time, retail sales work "so that she could purchase Christmas gifts for the children." *Id.* She was frustrated (by Paul) in later attempts to attend college. *Id.*

Paul's income (with bonuses), and the value of his 22% share of the family business were difficult to ascertain, due in some part to the nature of a closely-held, family enterprise, but due largely to Paul's manipulation and obfuscation (with the cooperation of his family members). Without dwelling on the details that led her there, we acknowledge the state court judge's conclusion:

> The Husband's conduct in this case, especially with respect to his finances, was disgraceful. Any which way the Husband could avoid his financial obligations to his wife and children, obfuscate his financial condition, and shrink the marital pool of assets, he tried with all his might.

*Id.* at 10.

In the end, after reconsideration of the initial judgment, the divorce court awarded Kathleen (insofar as pertinent here):

> (1) $ 450.00 per week, formally denominated child support, continuing until the youngest child is emancipated, graduates from college, or reaches the age of twenty-three;
>
> (2) one-third of Paul's future bonuses, formally denominated alimony:
>
> (3) $ 611,163.20, representing the value of Kathleen's marital share of Paul's

ownership interest in Whitman Tool & Die; and

(4) $ 222,000.00, representing Kathleen's share of the bonuses Paul received from Whitman Tool & Die during the time the couple had been separated, 1996–99.

Judgment at 2–3, Amendment at 1–2, Appellant's Appendix at Tab A.[5] The sums due to Kathleen in respect of Paul's previously paid bonuses and his ownership interest in the business were ordered paid over eleven years, with nine equal installments of $ 50,000.00 and two final equal installments (including interest) in years ten and eleven.

### 2. *The Pertinent Inquiry*

 Perspective on the bankruptcy court's inquiry into the intended function of obligations at issue under § 523(a)(5) is provided by the policy that underlies the discharge exception. Notwithstanding the hornbook proposition that discharge exceptions are to be narrowly construed, *Whitehouse v. LaRoche*, 277 F.3d 568, 575 (1st Cir.2002):

> One of the most venerable principles of American bankruptcy law is that a debtor's obligation to provide alimony or support to a spouse or former spouse will not be affected by the discharge order.... Whether a particular obligation constitutes alimony, maintenance, or support within the meaning of this section is a matter of federal bankruptcy law, not state law, and is determined by examining the nature of the debt at the time it was created.

*Swate v. Hartwell (In re Swate)*, 99 F.3d 1282, 1286 (5th Cir.1996) (internal quotations and citations omitted); *see also Shine*, 802 F.2d at 588 ("Congressional policy in this area has always been to

ensure that genuine support obligations would not be discharged.").

 The inquiry focuses on how the obligation was meant to function. *Id.* "[The court] must examine the circumstances that existed at the time that the obligation was created...." *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 295 (Bankr.D.R.I.1996). The § 523(a)(5) inquiry does not stop at the labels applied in the decree; its substance prevails over its form. *Id.* It is a "rear view mirror" view. Circumstances at the bankruptcy filing, at the time of trial, or in prospect play no proper role in the § 523(a)(5) inquiry. *In re Swate*, 99 F.3d at 1286 ("Circumstances of the parties subsequent to the entry of the judgment for divorce is [sic] irrelevant to that inquiry") (*quoting In re Larson*, 169 B.R. 945, 952 (Bankr. D.N.D.1994)).

 "Proper characterization of the obligation under § 523(a)(5) is a matter of federal law, but the substantive state law enlightens [the] analysis." *Brasslett v. Brasslett (In re Brasslett)*, 233 B.R. 177, 188 (Bankr.D.Me.1999) (citing cases).

### 3. The Procedural Path

Up until the bankruptcy court's initial ruling, this dispute's travel was uncomplicated. After trial, the bankruptcy judge initially found that all obligations at issue were excepted from discharge as alimony or support. Order dated October 2, 2001, Appellant's Appendix at Tab G. Subsequently, the court granted Paul's motion seeking reconsideration, and asked the parties to brief the question whether the $ 611,153.20 debt for Kathleen's share of Paul's ownership share in Whitman Tool would survive discharge under § 523(a)(15), rather than § 523(a)(5). Or-

---

**5.** We do not mean to say that the divorce judgment's other provisions are irrelevant to a court's § 523(a)(5) inquiry. The listed components are the ones at issue.

der dated November 14, 2001, Appellant's Appendix at Tab H. After taking the matter under advisement, the court reversed course, declaring finally that all the contested obligations, including the $ 611,-153.20 debt, were alimony, maintenance, or support under § 523(a)(5) and, therefore, nondischargeable.[6]

### 4. The Decision Below

 Courts have employed various multi-factor tests to assay whether a divorce-related court award or settlement agreement obligation (not labeled as alimony, maintenance, or support by the judgment or agreement) was intended to function as support. *See Soforenko*, 203 B.R. at 859 (collecting cases); *see also Stitham v. Stitham (In re Stitham)*, 154 B.R. 1, 3 & 4 n. 8 (Bankr.D.Me.1993).[7] In this case, the bankruptcy court employed the test first articulated in *Altavilla v. Altavilla (In re Altavilla)*, 40 B.R. 938, 941 (Bankr. D.Mass.1984), adjusting their application to the evidence before him. Paraphrased, the factors are as follows:

(1) whether the payment at issue is lump sum or installment;

(2) whether the obligation ends upon certain events (*e.g.*, remarriage, children attaining majority);

(3) whether the obligation was created in lieu of a greater alimony, maintenance, or support entitlement (denominated as such);

(4) whether that which was formally denominated as alimony, support, or maintenance would be adequate to function as such without the obligation at issue;

(5) the length of the marriage;

(6) whether children were involved; and

(7) the parties' respective earning power at the time of divorce.

Memorandum of Decision dated January 16, 2002, at 4, Appellant's Appendix at Tab F.[8]

The bankruptcy court concluded that the state court intended the payments Kathleen was to receive from Paul were to support her and her family, given that Kathleen's own earnings, supplemented by $450.00 a week in child support, were inadequate to do so. *Id.* at 5. In addition, he commented:

The foregoing considerations, in addition to the periodic nature of the Probate Court award as to the bonuses,

---

6. Paul's counsel makes much of what he paints as the bankruptcy judge's indecision and self-contradiction. We find it less troublesome. Absent a complaint of procedural unfairness, of which there is none, the judge's path to decision is of no consequence. The question before us is whether Paul's appeal will succeed or fail under the proper standard of review.

7. Conversely, bankruptcy courts sometimes must inquire to determine whether obligations ostensibly within the discharge exception are, after all, dischargeable. Section 523(a)(5) provides that obligations labeled as alimony, maintenance, or support will be excepted from discharge only if they are "actually in the nature of alimony, maintenance, or support."

8. Although the various tests may appear to imply otherwise, the search for intent and function is far from formulaic. Whatever the details of the analysis employed, the ultimate question is whether the obligation was intended to function to support the debtor's spouse, former spouse, or children at the time it was created. The inquiry is case-specific. No single "factor list" is the holy grail. As mentioned above, however, neither in the trial court nor before us did Paul take exception to the bankruptcy court's *legal* rulings. Rather, both there and here, he complains of the findings the court made pursuant to the model for decision those rulings provided.

with a ten year court-imposed deadline for payment, lead me to find that the entire debt was intended by the Probate Court to provide support for Ms. Werthen and the Werthens' minor children. It is also relevant that the Probate Court specifically included the one-third bonus award under child support and alimony and took great pains to describe the consideration given to the length of the marriage, as well as the education and employability of Ms. Werthen, as factors resulting in the forty percent interest in stock awarded to her by the Probate Court.

*Id.*

■■■ Although the bankruptcy court's decision is not as exhaustive as it might have been, we cannot conclude that its findings were clearly erroneous. The Probate Court's orders required Paul to pay Kathleen in installments that are roughly coextensive with the Werthen children's minority. Although Paul's obligations will only terminate on full payment and payments will continue to a date certain, the payment schedule was crafted to provide income to Kathleen and the four children during their time of greatest need. Every

penny that Paul was, and is, to pay may not be essential to the family's day-to-day survival (there may be something extra for family recreation, home repair, or college savings), but that is not an essential prerequisite to § 523(a)(5) nondischargeability.[9]

Moreover, it is plain that the awards labeled "property settlement" were in part made in lieu of more generous "alimony" awards.[10] As the court below noted, Kathleen's earnings and Paul's $450.00 per week support payments would not meet the family's needs. To that might be added the alimony pinned to Paul's periodic bonuses, but, as was apparent to the state court, Paul's bonus entitlement was not fixed and, therefore, remained subject to fluctuation (and, quite possibly, manipulation). Establishing Paul's installment obligations for separation-era bonuses and for Kathleen's share of the value of his business ownership enabled the Probate Court to see that the economic value on which the family depended during marriage would be channeled to Kathleen and the children without necessarily liquidating Paul's interests—a step that might be destructive of that value.[11]

9. Neither is it a requirement of Massachusetts law. Although financial *need* is a necessary prerequisite to an alimony award in Massachusetts, *Heins v. Ledis*, 422 Mass. 477, 664 N.E.2d 10, 16 (1996), the concept must be read in the context of the Massachusetts courts' definition of alimony as funds necessary "to maintain a standard of living comparable to the one enjoyed during the marriage." *Grubert v. Grubert*, 20 Mass.App.Ct. 811, 483 N.E.2d 100, 105 (1985) (citations omitted). The Massachusetts statute, Mass. Gen.Laws ch. 208, § 34, recites fourteen separate factors to be taken into account in awarding alimony, and combines those factors with the judge's discretion respecting such matters as "the contribution of each of the parties as a homemaker to the family unit."

We pause to emphasize that the state law content is properly considered by the bank-

ruptcy court, to inform its analysis, but that the essential question is not what the obligation "is" under state law, but whether its intended function qualifies it for § 523(a)(5)'s discharge exception as a matter of federal law.

10. The Massachusetts statute expressly states that property division may be ordered in "addition to or in lieu of a judgment to pay alimony." Mass.Gen.Laws ch. 208, § 34.

11. Paul's disingenuousness before the divorce court might well explain why the court decided it prudent to see that liquidated sums were paid to Kathleen over a certain period, rather than awarding her conventional alimony from Paul's future earnings. As long as Paul remained employed in the family business, his income (or at least his declared income)

Paul further contends that the result is unfair. Pointing to his current earnings, he complains he cannot afford to pay Kathleen what the divorce court ordered him to pay; that he will emerge from bankruptcy without anything approaching a fresh start. Our rejoinder is two-fold: First, as we have already made plain, Paul's current circumstances are irrelevant under § 523(a)(5). And a Chapter 7 debtor's fresh start is only as fresh as Congress has provided. He is not entitled to expect to be freed of obligations excepted from discharge under the Code. He has received his full measure of bankruptcy relief.[12]

We are satisfied that the bankruptcy court carefully considered the obligations at issue, singly and collectively, and that its conclusion that they are excepted from discharge, *in toto*, under § 523(a)(5) is not clearly erroneous. As a consequence, we need not consider the parties' § 523(a)(15) arguments.

### CONCLUSION

For the reasons set forth above, the order of the bankruptcy court is AFFIRMED.

would remain open to manipulation with the help of his family.

12. We do not understand Paul's point to be that the divorce court's award was "so excessive that it [was] manifestly unreasonable under traditional concepts of support," *In re Perlin*, 30 F.3d at 41, and, aside from relating to how an obligation should be characterized (*e.g.*, alimony or property division), we offer no opinion whether such a challenge would be pertinent in § 523(a)(5) litigation. In any event, given the parties' pre-divorce circumstances (including Paul's pre-separation income) and the number and ages of the Werthen children, Paul would be hard pressed to carry that point.