In re Michael P. HALE, Debtor.

Lisa Roberts Cowell,
Plaintiff/Appellant,

v.

Michael P. Hale, Defendant/Appellee.

Nos. MW 02–033, MW 02–034.
Bankruptcy No. 01–42796–JBR.
Adversary No. 01–4336–JBR.

United States Bankruptcy Appellate Panel
of the First Circuit.

March 7, 2003.

Alan S. Dambrov, Springfield, MA, on brief for the Appellant.

Michael P. Hale, Albany, NY, Pro Se.

Before HAINES, CARLO and DEASY, U.S. Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Judge.

Lisa Roberts Cowell appeals the bankruptcy court's order granting Debtor Michael Hale's motion for summary judgment. The bankruptcy court determined that sums Hale owed Cowell for their minor daughter's private school tuition under a Massachusetts divorce judgment and settlement agreement were not excepted from discharge as "support" within the meaning of § 523(a)(5) of the Bankruptcy Code.[1] Cowell also appeals the bankruptcy court's denial of her motion for relief from stay and abstention, seeking the ability to pursue state collection processes with regard to the obligations in question.

We recognize the question whether an obligation to a former spouse or a child is "support" within the statute's meaning is ordinarily a question of fact, not well-suited for summary determination. This case, however, is less about § 523(a)(5)'s sub-

---

1. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code" or "Code"), 11 U.S.C. § 101, *et seq.*

The bankruptcy court's memorandum of decision is published. *Cowell v. Hale (In re Hale)*, 279 B.R. 618 (Bankr.D.Mass.2002). Although she disagrees with the bankruptcy court's ultimate conclusion, Cowell takes no issue with the factual and procedural background set forth there. We have therefore drawn background facts for this opinion from it.

stance than it is about summary judgment practice. Here, the peculiar state of the record leads us to affirm the bankruptcy court. Because the second order, denying relief from stay and refusing to abstain, was entered as a function of the first, we affirm it as well.

## Background

Hale and Cowell were married from 1989 to 1993, when a final divorce decree entered in state court. Together they had one child, Sarah Roberts Hale. The divorce decree incorporates the parties' separation and property settlement agreement.

Under the separation agreement, Hale was obliged to pay 60% of his daughter's private school tuition and 100% of her undergraduate college tuition. The agreement expressly characterizes the obligation as "property settlement between the parties" given "in full satisfaction of the equitable division of . . . marital assets . . .," and, apart from the terms addressing custody, visitation, and child support, it provides that it will be incorporated into, but not merged in, the divorce judgment. Indeed, the agreement includes a parenthetical statement that "child support is not intended to include private school or college education costs."

A separate section of the agreement requires Hale to pay child support based on the Massachusetts Child Support Guidelines, which at the time of the divorce required payments of $200 a week. Hale also undertook to pay $2,500 for Cowell's legal fees. The agreement expressly excludes either party's entitlement to alimony.

In early 1999, seeking to enforce the private school tuition obligation, Cowell filed pleadings in state court. She, as well as the court, referred to Hale's tuition obligation as a product of the divorce "property settlement." The court found Hale in contempt and, among other things, ordered him to pay accrued arrearages of $49,335.00, plus interest. That sum represented only tuition payment defaults; at no time has Hale failed to pay the weekly obligation expressly denominated child support in the separation agreement.

Hale filed his voluntary Chapter 7 petition on April 26, 1999. Cowell filed an adversary complaint seeking a determination that Hale's obligation to pay Sarah's school tuition, accrued and accruing, secondary school and undergraduate, was excepted from discharge under § 523(a)(5).[2] Hale and Cowell filed cross-motions for summary judgment. The bankruptcy court determined that Hale's education-related obligations did "not constitute support within the meaning of 11 U.S.C. § 523(a)(5)" and, thus, they were not excepted from discharge.[3] Cowell's timely appeal ensued.

## Discussion

### 1. Jurisdiction

We have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a) and (b). The bankruptcy court's order determining the obligation at issue to be dischargeable, entered within the

---

**2.** The record does not indicate why Cowell's complaint did not contain an alternative count seeking a nondischargeability determination under § 523(a)(15), a separate provision excepting, *inter alia,* property settlement obligations from discharge under certain circumstances. *See Hastings v. Konick (In re Konick),* 236 B.R. 524 (1st Cir. BAP 1999);

*Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 300 (Bankr.D.R.I.1996).

**3.** *In re Hale,* 279 B.R. at 626. The court separately held that Hale's weekly support obligation, denominated as such, was excepted from discharge. Hale has not appealed that determination.

court's final judgment treating all claims in the adversary proceeding, is a final order. *See Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 646 (1st Cir. BAP 1998) (discussing finality of bankruptcy orders). Its order denying relief from stay and declining to abstain, pinned as it was to the summary judgment order, is final as well. *In re Calore Express Co.*, 288 F.3d 22, 34 (1st Cir.2002).

### 2. The § 523(a)(5) Standard

■ As we recently observed, a bankruptcy court's determination that an obligation constitutes (or does not constitute) support for § 523(a)(5)'s purposes is a case-specific, factual determination. *See Werthen v. Werthen (In re Werthen)*, 282 B.R. 553, 556 (1st Cir. BAP 2002). The critical issue is the function the (court's) award or the (parties') agreement was intended to serve. *Id.* (collecting cases).[4] The issue is controlled by federal law; the court must examine the circumstances as they existed at the time the obligation was created, going beyond the labels applied in the judgment or agreement. *In re Dressler*, 194 B.R. at 295. Substance prevails over form. *Id.* The parties' circumstances at bankruptcy, at trial, or in prospect, play no proper role in the § 523(a)(5) determination. *Swate v. Hartwell (In re Swate)*, 99 F.3d 1282, 1286 (5th Cir.1996).

■ Of course, a bankruptcy court's decision regarding § 523(a)(5) dischargeability implicates questions of law, whether it be the proper test or factors to consider in making the determination, *e.g., Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d

759, 762–63 (3d Cir.1990), or whether certain types of obligations can qualify as "support" within the statute's meaning, *e.g., Macy v. Macy (In re Macy)*, 114 F.3d 1, 2–3 (1st Cir.1997); *In re Werthen*, 282 B.R. at 556 n. 4.

### 3. Summary Judgment Review Standard

■ What we have said so far should make it fairly plain that § 523(a)(5) disputes are not generally good candidates for summary judgment, as they often feature disputes about historical intent. Nevertheless, the order before us was entered on summary judgment, and our decision today turns closely on summary judgment practice and process.

The First Circuit has illuminated summary judgment's role and the character of review appellate courts are to provide for summary judgment decisions:

> The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) (*quoting* Fed.R.Civ.P. 56 advisory committee's note). Thus, summary judgment is appropriate as long as "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because appellate review of orders granting or denying summary judgment is plenary,

---

4. There can be a critical difference between "intended function" and "function." The § 523(a)(5) inquiry goes to whether the parties to the agreement establishing the obligation in question bilaterally intended it to function as support (or whether the court imposing judgment did). In the absence of

such an agreement or order, how the resources flowing from the obligation were put to use by their recipient is often beside the point, although it could possibly carry some evidentiary value regarding preexisting intent. *See* discussion *infra* at § 4(d).

*Garside*, 895 F.2d at 48, this court, like the district court, "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

Despite this generous perspective, summary judgment is not a hollow threat. Creating a genuine issue of material fact requires hard proof rather than spongy rhetoric. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (explaining that "[g]enuine issues of material fact are not the stuff of an opposing party's dreams"). Thus, though the party opposing a summary judgment motion enjoys a favorable presumption for the evidence he adduces, that evidence must be such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.)*, 960 F.2d 200, 204 (1st Cir. 1992).

Of course, not every documented factual dispute will avert the swing of the summary judgment axe. To achieve that end, the dispute must relate to a *material* fact. *See id.* In this context, "material" means that a fact has the potential of affecting the outcome of the case. *Id.* And as to issues on which the nonmoving party bears the burden of proof, "he must present definite, competent evidence to rebut the motion." *Id.*

*Kearney v. Town of Wareham*, 316 F.3d 18, 21–22 (1st Cir.2002).

Cross-motions for summary judgment present peculiar problems. The court must consider each motion on the record provided and must take care not to confuse its limited role in passing on such a motion (that is, to determine whether the moving party is entitled to judgment as a matter of law on the undisputed material facts) with the role it would play were the parties to submit their case for decision on a stipulated record. As explained by Judge (now Justice) Breyer:

> The case seems to be one that the parties wished a magistrate or judge (not a jury) to decide on the basis of a written record. They did not stipulate, however, that the magistrate should do so; they filed cross-motions for summary judgment instead. The (sometimes unrecognized) difference between these two procedures is important; to stipulate a record for decision allows the judge to decide any significant issues of material fact that he discovers; to file cross-motions for summary judgment does *not* allow him to do so.

> Consider the problem of the district court that receives cross-motions for summary judgment in such a case. It must examine what may be a lengthy record. If it finds any significant factual issues, it must then go back to the parties to see whether they wish it to decide that issue—a waste of time if they had wanted it to do so in the first place. Alternatively, the district court may grant summary judgment for, say, a defendant, but the *appellate* court may find a significant factual question. Where the procedure consists only of "cross-motions for summary judgment," and the appellate court finds that genuine issues of material fact exist, it must remand to the district court for fact-finding. This remand might have been avoided had the parties initially authorized the district judge to *decide* any disputed factual question that he found. The appellate court would then have received the decision under a "clearly erroneous" fact-finding standard, *see* Fed. R.Civ.P. 52(a).

*Boston Five Cents Sav. Bank v. Secretary of the Dep't of Hous. and Urban Dev't,* 768 F.2d 5, 11–12 (1st Cir.1985) (citations omitted); *see also, e.g., Rutanen v. Baylis (In re Baylis),* 313 F.3d 9, 16 (1st Cir.2002) ("Both sides moved for summary judgment. Although styled as summary judgment, it is evident they expected the court to resolve the case on the stipulated record." Decision reviewed *de novo* because case decided on cross-motions for summary judgment); *Continental Grain Co. v. Puerto Rico Mar. Shipping Auth.,* 972 F.2d 426, 429–30 (1st Cir.1992) (in jury-waived case, parties' cross-motions for summary judgment were submitted on a record so comprehensive there was "no reason to suppose" any additional evidence could be adduced; judge had reason to believe that he could treat the case as submitted on a full evidentiary record; case nevertheless reviewed *de novo* as parties had not bargained for judge to venture beyond summary judgment role). The procedural perplexities pointed to in the preceding cases are predictably repeated in adversary proceedings.

■ In the case before us, Hale moved for summary judgment and, on the identical record, Cowell filed her cross-motion for *brevis* disposition.[5] At oral argument, Cowell's counsel acknowledged that he viewed the process as functionally the same as submitting the case on an agreed record. Hale's counsel has made no such acknowledgment. In any event, nothing before us demonstrates that the parties sought anything more (or less) than summary judgment rulings at the time their cross-motions were filed. Accordingly, we review the lower court's order *de novo*. *See In re Baylis,* 313 F.3d at 16.

**4. The Summary Judgment Record**

**a. Hale's Motion and Supporting Facts**

After a period of discovery, Hale moved for summary judgment declaring his tuition obligation to Cowell dischargeable. In accordance with Fed. R. Bankr.P. 7056, Fed.R.Civ.P. 56(b) and (c), Ma. L.B.R. 7056–1, and Ma. D.C.L.R. 56.1,[6] Hale's motion incorporated a comprehensive statement of material facts, with record citations, as to which he contended there were no genuinely contested issues for trial. The critical material facts asserted in the motion (without accompanying record citations) included the following:

. 1. On April 21, 1993, the divorce court entered a divorce judgment, finding that the marriage had suffered an irretrievable breakdown.[7]

**5.** Indeed, as explained more fully below, Cowell agreed to the undisputed material facts set forth in Hale's motion.

**6.** The Massachusetts Bankruptcy Court's local rule incorporates the Massachusetts District Court's local rule governing summary judgment. It provides:

Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement to be served by opposing parties. Ma. D.C.L.R. 56.1.

**7.** Defendant's Concise Statement of the Material Facts as to Which there is no Genuine Issue to be Tried ("Material Facts"), ¶ 6. This

2. The state court stated that: "[t]he parties shall comply with their Separation/Property Settlement Agreement and Custody/Visitation Agreement filed with this Court on April 23, 1993, the terms of which shall be incorporated but not merged into the Judgment of this court and shall survive and have independent significance with the exception of the issues of custody, visitation and child support (child support is not intended to include private school or college education costs) which issues shall merge into said Judgment and become a part thereof."[8]

3. Hale was ordered to pay $200.00 per week as child support[9].

4. Hale's obligation to pay educational costs was set out in the parties' separation agreement as follows: "As property settlement between the parties and in full satisfaction of the equitable division of the marital assets in accordance with M.G.L. Chapter 208, Section 34, the HUSBAND agrees to contribute to the cost of Sarah's pre-undergraduate college private school upon presentation of billing statement."[10]

5. In 1999 Cowell filed a state court complaint alleging Hale's failure to pay 60% of Sarah's private school tuition, the court found Hale in contempt for willfully refusing to pay, and it ordered Hale to pay Cowell $49,335.00.[11]

6. "The Separation/Property Settlement Agreement between the parties unquestionably classifies the obligation of the debtor, Michael P. Hale to pay the private school tuition and college expenses of the child as a property settlement."[12]

7. The state court expressly segregated the tuition obligation from Hale's undertakings regarding child support, custody, and visitation, with the latter category subject to modification.[13]

8. "Both the Plaintiff and Defendant clearly intended that this obligation to pay for the child's future educational expenses was an anticipated debt and not maintenance and support for the child."[14]

9. "The Separation/Property Settlement Agreement of April 21, 1993[,] between the parties, the Judgment of Divorce Nisi of same date, and the Amended Judgment for Contempt of March 20, 2001 all support in clear and unequivocal language the characterization of the obligation as one of property settlement and an equitable division of marital assets under the Massachusetts property division statute."[15]

10. "The Debtor sought to resolve the claims of his estranged wife on his real estate and other property."[16]

11. "The Plaintiff wanted contract terms which would not be subject to a possible reduction through modification by the Court, hence the language in Paragraph 22 of the Separation/Property Settlement Agreement stating 'the parties intend that this Agreement shall

---

and succeeding paragraphs paraphrase the material facts set forth in Hale's summary judgment motion. Quoted sentences or phrases are taken from the Material Facts *verbatim*.

**8.** Material Facts ¶ 7.

**9.** Material Facts ¶ 8.

**10.** Material Facts ¶ 9.

**11.** Material Facts ¶¶ 10, 11.

**12.** Material Facts ¶ 14.

**13.** Material Facts ¶¶ 15—17.

**14.** Material Facts ¶ 18; *see also* ¶¶ 19—22.

**15.** Material Facts ¶ 19.

**16.** Material Facts ¶ 24.

survive as a separate and independent contract between the parties and enforceable as such with the exception of issues of custody, visitation and child support which issues shall merge into said Judgment.' "[17]

12. Cowell's earnings were not in doubt at the time of the divorce. She was earning an "increasingly high salary" in the "well-paying" advertising sector of the fashion magazine industry.[18]

13. Hale's educational expense obligation was to be insured, unlike his obligation to pay child support, which would cease upon his death.[19]

**b. Cowell's Response**

Cowell filed a timely response to Hale's motion, accompanied by her own cross-motion for summary judgment. Her submissions are problematic. She took no issue with the undisputed material facts Hale had proffered, but sought to add several additional facts to the summary judgment record. Because the content of her response figures so large in our decision, it is set out fully here:

*Statement of Undisputed Facts*

Without waiver of her right to argue the legal significance and import of the facts set out, the Plaintiff accepts and incorporates the statement of undisputed facts set out in Section II of "MICHAEL P. HALE'S MOTION FOR, AND MEMORANDUM IN SUPPORT OF, SUMMARY JUDGEMENT" and the documents annexed thereto. Each document identified in MICHAEL P. HALE'S MOTION FOR, AND MEMORANDUM IN SUPPORT OF, SUMMARY JUDGEMENT should be viewed in their entirety and by limited excerpts, except when appropriate to bolster an

argument. Plaintiff does not adopt or accept the editorial or adjective descriptions provided in MICHAEL P. HALE'S MOTION FOR, AND MEMORANDUM IN SUPPORT OF, SUMMARY JUDGEMENT.

The plaintiff states that the following facts are also not disputed:

1. The annual costs for private school tuition as charged by The Convent of the Sacred Heart. Only the past due amounts are identified in the MICHAEL P. HALE'S MOTION FOR, AND MEMORANDUM IN SUPPORT OF, SUMMARY JUDGEMENT. The past due amount of $49,335.00 is set out in Exhibit "D" of MICHAEL P. HALE'S MOTION FOR, AND MEMORANDUM IN SUPPORT OF, SUMMARY JUDGMENT.

2. The amount due for the current school year, 2001–2002, is set out in a statement from the school annexed hereto marked Plaintiff's Exhibit "1". Per the SEPARATION/PROPERTY SETTLEMENT AGREEMENT, Debtor/Defendant's Exhibit "B", Hale was obligated as follows: "60% of all Private School Tuition costs shall be responsibility of Husband to pay directly to the school upon presentation of billing statement." Exhibit "B", SEPARATION/PROPERTY SETTLEMENT AGREEMENT, at p. 6.

The Debtor/Defendant has an obligation to continue making child support payment to the plaintiff in accordance with the provisions of the SEPARATION/PROPERTY SETTLEMENT AGREEMENT, Exhibit "B", pp. 5–7.

*Statement of Disputed Facts*

1. To the extent that Debtor/Defendant Hale's obligation to pay for his daugh-

---

**17.** Material Facts ¶ 25.

**18.** Material Facts ¶ 26.

**19.** Material Facts ¶ 27.

ter's private school tuition and college expenses is an issue of fact, then the parties do not agree on the import of the parties' Divorce Agreement. However, since there is no dispute about the language of the Divorce Agreement and the costs of her schooling, it appears that the only issue before the Court can be decided upon the undisputed facts.

2. The Plaintiff also disputes that she has been earning an increasingly high salary and further states that the respective earnings of the parties in the past, present or future are not relevant to the issues before the Court and that the Court can provide the relief sought by the Plaintiff and the basis of the facts that are agreed upon in the proceedings.[20]

Under Massachusetts local rules, Cowell's failure to controvert Hale's assertedly undisputed material facts rendered them "for purposes of the motion to be admitted." [21] The "additional facts" she set forth in her response addressed the accrued and ongoing nature of Hale's obligation, rather than the circumstances of the obligation's creation.

As to the facts Cowell considered "disputed," her statement concedes, first, that as far as the language of the critical agreement is concerned, it "says what it says." And as to the parties' respective earnings, if Cowell meant to dispute facts relating to

her earnings at the time of the divorce, she provided no record citation contradicting those supporting Hale's statements.[22] Insofar as her response related to her post-divorce, ongoing earnings, it is beside the point. *In re Swate*, 99 F.3d at 1286 (focus is on circumstances as they existed at obligation's creation); *In re Dressler*, 194 B.R. at 295. The most that can be said about Cowell's response to Hale's motion and the facts he set forth in support of it is that she did effectively take issue with his statement that she earned an "increasingly" high salary at divorce.[23]

### c. The Summary Judgment Determination

■ Before the bankruptcy court both Cowell and Hale argued the merits of their motions under the test employed by the Third Circuit in *In re Gianakas*, a test formulated to assay the character of an obligation as support by determining the parties' (or the court's) intent at the time the obligation was created, focusing on three principal factors: (1) the language and substance of the agreement (or judgment) in the context of surrounding circumstances, (2) the financial circumstances of the parties at the time of the agreement, and (3) the function served by the obligation at the time of the settlement (or judgment). *In re Gianakas*, 917 F.2d at 762–63.[24]

The bankruptcy judge applied the test straightforwardly on the record presented

---

**20.** Plaintiff Lisa Roberts Cowell's Opposition to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment with Memorandum of Law and Discussion Including a Motion for Abstention ("Cowell Opposition").

**21.** *See* Ma. D.C.L.R. 56.1, *supra* n. 6.

**22.** Hale's statement regarding her income at divorce, as it related to his own, was supported by submissions each party had made

in the state court, as well as by copies of their respective tax returns.

**23.** On that point, the summary judgment record is unequivocal that, at divorce, Cowell's weekly earnings exceeded Hale's and that her annual income for 1993 exceeded his substantially.

**24.** We have recently observed that the bankruptcy courts have employed various multi-factor tests to determine whether a divorce-

him. *In re Hale,* 279 B.R. at 623–26. Among the uncontroverted facts before him was, in essence, the ultimate fact: "Both the Plaintiff and Defendant clearly intended that this obligation to pay for the child's future educational expenses was an anticipated debt and not maintenance and support for the child." [25] Moreover, the undisputed facts established that the parties' settlement agreement was not only clear and unequivocal on the point that Hale's agreement to pay Sarah's private school and undergraduate tuition was part and parcel of a property settlement, it went out of its way to emphasize the point.[26] The facts of record regarding circumstances surrounding the agreement's execution demonstrated that Hale's agreement to pay tuition expenses was meant to resolve Cowell's claims against his property.[27] And, although one might argue whether or not Cowell's income was "increasing" at the time of the divorce, it was uncontested on the record before the court below that at or near that time, Cowell's earnings surpassed Hale's.[28] Finally, other uncontroverted facts about the obligation (*e.g.,* it endured beyond Hale's death and was insured), also supported its character as property settlement, rather than support.[29]

#### d. Arguments on Appeal

On appeal, Cowell asserts legal error on the ground the bankruptcy court "misap-

plied" *Gianakas,* incorrectly employing it in an attempt to gauge the *intended* function of Hale's obligation at divorce, rather than simply determining whether Cowell's "use" of the funds served a function consistent with the notion of child support. The effort is unavailing for two reasons. First, the position she takes is at odds with her argument below.[30] Second, it is inaccurate. The multi-factor tests employed in § 523(a)(5) analysis gauge the "intended function" of the obligation at issue, rather than its function in fact. *See In re Gianakas,* 917 F.2d at 762; *In re Werthen,* 282 B.R. at 558. They do so for good reason. If one divorcing spouse agreed to sell an asset and divide the proceeds with his or her spouse, all in the context of an otherwise unquestionable property settlement arrangement, the fact that the spouse receiving the proceeds unilaterally decided that the funds would be devoted to a purpose that supported a child (private school tuition, say, or stabling a pony), would not transform the obligation from property settlement to child support. The *record* here is not dissimilar. Although Cowell argued below that Sarah's private school tuition had been an agreed "necessity," [31] she did not effectively contradict Hale's assertion that his tuition obligation was part and parcel of a property settlement between Sarah's divorcing parents. Thus, under the pertinent summary judgment rules, Cowell was deemed to have *admitted* Hale's assertion.

related court award or settlement agreement obligation (not labeled alimony, maintenance, or support) is or is not excepted from discharge under § 523(a)(5). *In re Werthen,* 282 B.R. at 559. Given that the parties each subscribed to the *Gianakas* formulation below, we need not choose among them today.

**25.** *See supra* text accompanying notes 14–15.

**26.** *See supra* text accompanying notes 8, 10, 12, 13, 14, 15.

**27.** *See supra* text accompanying notes 15, 16.

**28.** *See supra* text accompanying notes 18, 22, 23.

**29.** *See supra* text accompanying note 19.

**30.** *See* Cowell Opposition at pp. 6–10.

**31.** Cowell Opposition at 8–9. The assertion is set forth in the body of Cowell's legal argument.

Cowell is left with her assertion that, as a matter of law, an agreement to pay education expenses of a minor child is always excepted from discharge under § 523(a)(5). As an abstract proposition, the argument has appeal, but given the fact-specific character of the § 523(a)(5) determination, *per se* rules are inappropriate.[32] And for this case, another, more tightly focused reason obtains. The record before us presents a case where the proposition would not hold. Regardless how the record was constructed, by calculation or, more likely, by miscalculation, it presents a case where the conclusion that the obligation to pay education expenses was sourced in an intention to settle property division issues, rather than to supply support for Sarah, is inescapable.

This is anything but a typical case. We are struck by the ease with which Cowell could have generated genuine issues of material fact. Had she met Hale's statement of undisputed facts with documented denials, supported by her own affidavit—perhaps, we think, even with references to the portions of the very record Hale filed—our outcome today would be different and the dischargeability issue would be proceeding to trial below. Instead, however, she *adopted* those facts as her own—with disastrous effect.

Historically, the First Circuit has recognized circumstances in which a summary judgment opponent might escape defeat notwithstanding a less than adequate response to the motion. We take a moment to discuss *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir.1983), because it was there that the First Circuit explained the roots of modern summary judgment practice, such as that reflected in the Massachusetts District Court's local rules (incorporated by the bankruptcy court). In *Stepanischen*, a railway employee sued his employer for wrongful discharge. *Id.* at 923. The employer moved for summary judgment with exhaustive underlying papers. *Id.* at 927–28. The employee's response consisted of a one-page objection, a one-page cross-motion for summary judgment, and a two-page affidavit. *Id.* The district court granted the employer's motion and denied the employee's cross-motion. On appeal, the court reversed, noting "with frustration the more and more typical phenomenon, present in this case, of a district court having to decide a motion for summary judgment without the assistance the court should expect from counsel." *Id.* at 927. The appeals court perused the record, as required by Fed.R.Civ.P. 56(c), and concluded that genuine issues of material fact existed, particularly with regard to the "basic issue" in the case—the employer's state of mind. *Id.* at 928. The court commented:

32. Cowell's point, that education is "basic," overlooks the difference between public (free) education, which is available to all, and private education, which comes, as here, at substantial cost. Similarly, it overlooks the distinction · between primary and secondary schooling (which most would term essential) and college education (which many would consider desirable, but not essential).

The tenor of § 523(a)(5) analysis, where labels do not hold sway and determinations are fact-intensive, counsels against bright-line pronouncements. We recognize that most courts addressing the issue whether tuition responsibility agreements between divorced spouses create obligations excepted from discharge under § 523(a)(5) have held that they do. Those decisions are, however, case specific and the deciding courts uniformly analyze the facts and circumstances extant at the obligation's creation in reaching their decisions. *See, e.g., Draper v. Draper (In re Draper)*, 790 F.2d 52, 54 (8th Cir.1986); *Seixas v. Booth (In re Seixas)*, 239 B.R. 398, 402–03 (9th Cir. BAP 1999); *Kaylo v. Kaylo (In re Kaylo)*, 183 B.R. 557, 558–59 (Bankr. W.D.Ark.1995); *Warren v. Warren (In re Warren)*, 160 B.R. 395, 397 (Bankr.D.Me.1993).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

*Id.* Even if a party opposing summary judgment did not respond with specific facts showing a genuine issue for trial, Rule 56(c), summary judgment could issue only "if appropriate."

> The phrase "if appropriate" incorporates the general standard [of Rule 56(c)] which requires absence of genuine issues of material fact. The drafters of Rule 56(e) made clear in their comments to the rule that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, *summary judgment must be denied even if no opposing evidentiary matter is presented.*" This interpretation is also consistent with the principle that the initial and ultimate burden of persuasion in a summary judgment motion rests with the moving party. *Thornton v. Evans,* 692 F.2d 1064, 1075 (7th Cir. 1982) (citation omitted).

*Id.* at 929 (emphasis in original). Thus, although the court considered the employee's summary judgment papers woefully inadequate, it determined that the very record relied upon by the employer harbored material factual issues. In the

course, Judge Coffin addressed generally the problem facing trial court judges who might be "unfairly sandbagged by unadvertised factual issues" in the summary judgment record. *Id.* at 931. He considered that district judges might avoid surprise and unfairness by ordering summary judgment movants to file a list of undisputed facts (with record citations) and ordering non-moving parties to respond with a counter-list documenting genuine factual disputes or by adopting directive local rules. *Id.* He cited local rules in force in other districts and suggested that "the District of Massachusetts consider whether some such rule is desirable." *Id.* at 932.

The Massachusetts local rule now governing the summary judgment procedures reflects Judge Coffin's suggestion. It requires the movant to support its motion with a concise statement of material facts and the nonmovant to respond by listing the material facts in dispute.[33] Material facts not expressly disputed are deemed *admitted.* In the case before us, Hale's material facts were not only admitted by virtue of Cowell's failure to dispute them in accordance with the rule, they were expressly *adopted* in her response and cross-motion. Those facts included determinative facts under the *Gianakas* test. Far from demonstrating issues for trial, her admissions were fatal. The bankruptcy court correctly granted Hale's summary judgment motion and denied Cowell's.

### Conclusion

For these reasons, the bankruptcy court's order granting summary judgment to Hale on Counts I, II, III, and V of Cowell's complaint is affirmed. Because that result determined the disposition of Cowell's motion for relief from stay and

---

**33.** *See supra* note 6 for the full text of the    Massachusetts local rule.

abstention, the bankruptcy court's order denying her that relief is affirmed, as well.