BOUDIN, Chief Judge.
 

 Paul Werthen, the debtor in this chapter 7 bankruptcy proceeding, appeals from a judgment of the Bankruptcy Appellate Panel (“BAP”) for the First Circuit affirming an order of the bankruptcy court. That order determined that two obligations of Paul to his ex-wife Kathleen Werthen, incurred in their state-court divorce proceeding, were alimony or support rather than property division, and therefore nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5) (2000).
 
 [1]
 
 We affirm, conceding the case to be a close one under a badly muddled statute.
 

 Paul and Kathleen were married in 1982 and separated in 1995, when Kathleen filed for divorce. During the marriage, Kathleen was the primary caretaker of the home and the couple’s four children. Paul was the primary earner, working full time at Whitman Tool & Die Co. (“Whitman”), his family’s business in which he held a considerable equity interest. The Massachusetts Probate and Family Court issued an initial divorce decree on March 7, 2000, and entered an amended judgment together with a supporting memorandum on May 2, 2000.
 

 The picture painted by the state court was not favorable to Paul. He had drinking problems, he physically abused his wife and children during the marriage, and he frustrated Kathleen’s efforts to obtain a
 
 *271
 
 college degree and a measure of financial independence while strictly limiting her allowance. During the divorce proceedings, he and other family members engaged in obfuscatory tactics or worse, aiming to diminish the award against him. The state court noted these circumstances as supporting a generous award, but they do not by themselves explain which portion of the award was alimony and support.
 

 More pertinent to the level of alimony and support were other findings: that the Werthens were a “middle-to-high income family;” that she would have custody of the children who were still relatively young; that her ability to work was affected by a back injury and limited by her curtailed education; that his past income and the value of his family-company stock were large; and that he had understated income and value to decrease the award. On this last issue, the state court found: “Any which way the Husband could avoid his financial obligations to his wife and children, obfuscate his financial condition, and shrink the marital pool of assets, he tried with all his might.”
 

 The final decree awarded Kathleen-under the rubric of “Child Support and Alimony” — one-third of Paul’s future bonuses and $450 a week in child support. The former payments are to continue until Paul’s death or Kathleen’s death or remarriage; and the latter payments are to continue until the youngest child (born in 1989) is emancipated, graduates from college, or reaches the age of twenty-three. Paul does not dispute that these awards are not dischargeable in bankruptcy. The dischargeability issue, which alone concerns us, arises from two items contained in the balance of the state court award.
 

 Under the rubric of “Property Division,” the state court awarded Kathleen
 
 inter alia
 
 (1) $222,000, representing 60 percent of the gross bonuses received by Paul in the years 1996-99, reduced to $124,485.84 by amounts in savings accounts already awarded Kathleen .(the “past bonus award”); and (2) $611,163.20, representing Kathleen’s 40 percent marital share of Paul’s 22 percent equity interest in Whitman (the “stock award”). With respect to these two awards, the court structured Paul’s payment schedule as yearly installments of $50,000 for nine years beginning in 2000, with the remaining balance due in two separate payments in the tenth and the eleventh years (plus interest on unpaid balances).
 

 On July 28, 2000, less than 90 days after the final judgment, Paul filed a voluntary petition for chapter 7 bankruptcy. In that proceeding Kathleen sought a ruling that the past bonus and stock awards — largely or entirely yet unpaid— were not subject to discharge. Her first claim was based on the above-quoted paragraph (5) of subsection 523(a), which prevents discharge of obligations for alimony or support. Alternatively, she relied on paragraph (15), which prevents discharge of other debts incurred in a divorce — even where not within the scope of paragraph (5) — unless the hardship from such a discharge is outweighed by the interests of the debtor.
 
 [2]
 
 Kathleen bore the burden of showing that the debts were nondischarge
 
 *272
 
 able.
 
 Grogan v. Garner,
 
 498 U.S. 279, 287-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991);
 
 Palmacci v. Umpierrez,
 
 121 F.3d 781, 787 (1st Cir.1997).
 

 The bankruptcy court held a trial on October 2, 2001, and then ruled in a bench opinion that both the bonus and stock awards were nondischargeable under paragraph (5). Thereafter, the court initially altered its position as to the stock award, raising the possibility that it might instead be separately analyzed under paragraph (15); but in a final written decision, the court returned to its original ruling, holding both the bonus and stock awards to be nondischargeable under paragraph (5). The bankruptcy court treated the issue as one turning on the intent of, but not necessarily the label employed by, the state court judge in making the awards.
 

 To discern this intent, the bankruptcy court invoked a set of factors set forth in
 
 Altavilla v. Altavilla (In re
 
 Altavilla), 40 B.R. 938, 941 (Bankr.D.Mass.1984). In viewing the awards as intended “to provide support” for Kathleen and the children rather than as division of property, the court stressed in its final decision Kathleen’s otherwise limited resources and earning capacity, the lengthy pay-out period of the two awards, and several other factors. On Paul’s appeal, the BAP affirmed, holding that intent was a question of fact and concluding that the bankruptcy court’s decision was not plainly wrong. It too mentioned the payment structure and the lack of other assured income to support the family, the future bonus payments being uncertain.
 

 On appeal, we are in the same position as the BAP, effectively reviewing the bankruptcy court’s findings of fact for clear error and affording
 
 de novo
 
 review to its conclusions of law. Fed. R. Bankr.P. 7052;
 
 Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int’l, Inc.),
 
 132 F.3d 104, 107-08 (1st Cir.1997). Such duplicative review is a historical artifact, but it does allow us the benefit of the BAP’s expertise in bankruptcy matters. The issue presented is a recurring one with a long history of case-law and legislative development.
 
 [3]
 
 Unfortunately, the statutory bifurcation in paragraph (5) rests on an unstable assumption.
 

 Paragraph (5) turns upon a supposed distinction between “support” payments for spouse and children (what the statute calls “alimony to, maintenance for, or support of such spouse or child”) and other kinds of divorce awards — for example, a division of jointly owned property. A similar distinction is used to determine the federal tax consequences of such payments and may have other effects under state law.
 
 [4]
 
 But the concepts are not necessarily identical in each context, and we are concerned here only with the meaning of the
 
 *273
 
 terms in section 523(a)(5), which is a matter of federal bankruptcy law.
 
 See Swate v. Hartwell (In re Swate),
 
 99 F.3d 1282, 1286 (5th Cir.1996); S.Rep. No. 95-589, at 79 (1978),
 
 reprinted, in
 
 App. D
 
 Collier on Bankruptcy,
 
 App. Pt. 4-2025 (15th ed. 1998)
 
 (“Collier”).
 

 The underlying concept is easy to grasp: support payments are, roughly speaking, what is given to provide for the upkeep of the recipient spouse and children, see,
 
 e.g.,
 
 4
 
 Collier,
 
 ¶ 523.11[5], at 523-81, while other divisions or payments serve different purposes. The central problem is that the two supposedly separate categories overlap because the need for ongoing support will often depend on how much property the less well-off spouse is given outright. Indeed, under Massachusetts law, courts are authorized expressly to award property “[i]n addition to or
 
 in lieu of
 
 a judgment to pay alimony.” Mass. Gen. Laws ch. 208, § 34 (2000) (emphasis added).
 

 The federal courts have been unwilling to treat the label applied by the divorce court as controlling for Bankruptcy Code purposes.
 
 See, e.g., Dennis v. Dennis (In re
 
 Dennis), 25 F.3d 274, 278 & n. 5 (5th Cir.1994) (collecting cases). Nominally, the critical issue is whether the divorce court judge “intended” a particular award to be for support or for something else.
 
 E.g., Holliday v. Kline (In re
 
 Kline), 65 F.3d 749, 750 (8th Cir.1995). In practice, courts look at a range of factors, including the language used by the divorce court and whether the award seems designed to assuage need, as discerned from the structure of the award and the financial circumstances of the recipients. 4
 
 Collier,
 
 ¶ 523.11[6],
 

 Here, as usual in cases worth litigating, the factors do not all line up on one side. One of those helpful to Kathleen is that the award of formal alimony and support to her seems quite limited for an upper middle-class household with several children: $450 per week for the four children (roughly $23,400 per year), plus the evanescent obligation that Paul pay Kathleen one-third of his future “bonuses” — a form of compensation that the state court recognized could easily be manipulated downward within a family company. Kathleen did have real earning capacity but it was capped by her frustrated education, childcare obligations and her back injury.
 

 In this situation, it is no great leap to suppose that $50,000 per year for the next decade, representing the structured payout of the past bonus and stock awards, was intended in some measure to close the gap. As the bankruptcy court pointed out, the main pay-out period corresponded roughly to the time in which Kathleen would be supporting the children and would be responsible as well, under the decree, for a portion of their college tuition. That the payment period did not end with anyone’s death or exact majority could be a point in Paul’s favor, 4
 
 Collier,
 
 ¶ 523.11[6][d], at 523-85, but a payout of fixed property in installments is another way to recognize resources available from the payor in fixing support.
 

 The Tenth Circuit took such a view in
 
 Goin v. Rives (In re Goin),
 
 808 F.2d 1391 (10th Cir.1987)
 
 (per curiam).
 
 There, a state court awarded the wife $350 per month in child support and the sum of $80,000 to be paid in annual increments of $5,000. The decree said that the $80,000 represented the wife’s “one-half interest in certain real estate and stock.”
 
 Id.
 
 at 1392. The Tenth Circuit affirmed a finding of nondischargeability, in part because the state decree did not provide for any alimony, and because the bankruptcy court found that $350 a month was insufficient to support both the spouse and the children in conformity with the lifestyle to which
 
 *274
 
 they had become accustomed.
 
 Id.
 
 at 1392-93.
 

 Paul’s first argument for an out-and-out discharge is the state court’s formal division of its assessments into two boxes; but under paragraph (5), payments intended for the support of spouse and child are not dischargeable and the Massachusetts statute quoted above says that an award of property can be made “in lieu” of alimony. Perhaps a more useful point — which Paul does not stress — is that, although $50,000 a year for alimony might not seem outlandish for a man who averaged roughly $150,000 a year during 1996-99, the final catch-up payments in years 10-11 appear to total over $200,000 apart from accrued interest, which does not sound like annual alimony or support outside the world of the super-rich.
 

 Paul also argues in his brief that a precise calculation of Kathleen’s income and needs shows that she was well-off without the disputed awards, but Kathleen’s own detailed figures and analysis suggest that she was underfunded. Neither the state court nor the bankruptcy court made a systematic assessment of the numbers in terms of “need.” Our own assessment suggests that without the awards, Kathleen would be underfunded at least to some extent in relation to her own description of expenses.
 

 Accordingly, we see no basis to disturb the conclusion of the bankruptcy court. Just how much deference is due to its assessment is debatable,
 
 see Lentz v. Spadoni (In re
 
 Spadoni), 316 F.3d 56, 58 n. 1 (1st Cir.2003), but there is substantial reason to believe that the state court in some measure intended the property division to assure adequate support for Kathleen and her children. The raw numbers, the uncertainty of future bonus payments, and the lengthy payout period all support this conclusion. The property-division label applied by the court seems most likely to have reflected no more than the mechanical fact that the payments were to come from identified existing resources.
 

 This could be a different case had Paul argued for a remand. A position neither side has taken is that the two disputed awards were partly intended as support and partly as an equitable division of joint property over and above the amount needed for adequate support. Some allocation of the awards between the two categories might reflect the “right” answer; and some courts have so analyzed such problems.
 
 See, e.g., Cummings v. Cummings,
 
 244 F.3d 1263, 1266-67 (11th Cir.2001);
 
 Wright v. Wright (In re
 
 Wright), 184 B.R. 318, 319 (Bankr.N.D.Ill.1995).
 

 But in this case such a division would be very hard to calculate and would consume more time and lawyer expense — not to speak of the need then to decide the residual paragraph (15) issue. Nor is it clear that the result would better correspond to the “intent” of the state judge who was not completing a bankruptcy schedule but trying to solve a down-to-earth problem of allocating assets and income streams in a divorce. Paul was entitled to make this appeal an all or nothing choice; we see no reason to inject further options that he did not seek.
 
 Cf. Haffner’s Serv. Stations, Inc. v. Comm’r,
 
 326 F.3d 1, 5 (1st Cir.2003).
 

 The larger problem remains that the present statute needs revision. It is no accident that the 1970 Commission on the Bankruptcy Laws of the United States recommended that the line-drawing approach between alimony and property division be abandoned. Report of the Commission, H.R. Doc. No. 93-137 (1973),
 
 reprinted in
 
 App. B
 
 Collier,
 
 App. Pt. 4-706, 709-10. The competing interests are
 
 *275
 
 for Congress to sort out; but a more ad-ministrable solution is overdue.
 

 Affirmed.
 

 [1]
 

 . In relevant part, section 523(a)(5) provides:
 

 A discharge under ... this title does not discharge an individual debtor from any debt
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a ... divorce decree ... but not to the extent that
 

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.
 

 [2]
 

 . In relevant part, section 523(a)(15) provides:
 

 A discharge under ,.. this title does not discharge an individual debtor from any debt
 

 (15) not of the kind described in paragraph (5) that is incurred by a debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, ... unless
 

 (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.
 

 [3]
 

 . The alimony exception to bankruptcy discharge originated with
 
 Audubon v. Shufeldt,
 
 181 U.S. 575, 577-78, 21 S.Ct. 735, 45 L.Ed. 1009 (1901).
 
 See also Dunbar v. Dunbar,
 
 190 U.S. 340, 351-52, 23 S.Ct. 757, 47 L.Ed. 1084 (1903) (child support). Congress then confirmed the judicially created exception for alimony payments. Act of Feb. 5, 1903, ch. 487, § 5, 32 Stat. 797, 798. The distinction between nondischargeable support and dis-chargeable property division payments developed in case law,
 
 e.g., Caldwell v. Armstrong,
 
 342 F.2d 485, 488 n. 5 (10th Cir.1965), and was codified in the 1978 Code.
 
 See
 
 11 U.S.C. § 523(a)(5);
 
 Shine v. Shine,
 
 802 F.2d 583, 586-587 (1st Cir.1986).
 

 [4]
 

 . In general, alimony is deductible to the pay- or and taxable to the payee, 26 U.S.C. §§ 61(a)(8), 62(a)(10) (2000); and in Massachusetts, alimony is modifiable, but property divisions are not,
 
 compare
 
 Mass. Gen. Laws ch. 208, § 37 (2000) (revision of alimony),
 
 with Drapek v. Drapek,
 
 399 Mass. 240, 503 N.E.2d 946, 949 (1987) (no revision of property settlement).