Nelson J. SMITH, Debtor.

Nelson J. Smith, Appellant,

v.

Rita M. Pritchett, Appellee.

BAP No. 08–006.
Bankruptcy No. 07–12195–JMD.

United States Bankruptcy Appellate Panel
of the First Circuit.

Dec. 29, 2008.

Mark P. Cornell, Esq., and Kelly Ovitt Puc, Esq., on brief for Appellant.

Clifford P. Gallant, Jr., Esq., on brief for Appellee.

Before VOTOLATO, LAMOUTTE, and FEENEY, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

Nelson Smith (the "Debtor") appeals from the bankruptcy court order overruling the Debtor's objection to the proof of claim filed by his former spouse, Rita Pritchett ("Pritchett"), and denying the Debtor's motion to avoid Pritchett's lien. The outcome of both matters turned on the bankruptcy court's finding that Pritchett's claim, which consisted entirely of penalties for late alimony payments, is a "domestic support obligation" within the meaning of 11 U.S.C. § 101(14A). The critical issue is whether the Debtor's obligation to pay a penalty of $50 per day on late payments of alimony is in the nature of alimony, maintenance or support such that the obligation is a domestic support obligation entitled to priority claim status and exemption from lien avoidance.

## ISSUE ON APPEAL

Whether a claim for a debt that consists entirely of penalties for late alimony payments, and interest thereon, is "a domestic support obligation" as defined by 11 U.S.C. § 101(14A), and thus is a priority claim under 11 U.S.C. § 507(a)(1) and whether the lien securing the obligation is not avoidable under 11 U.S.C. § 522(f)(1)(A).

## BACKGROUND

*A. The Divorce*

The Debtor and Pritchett were married in 1986. There were no children of the marriage. In 1995, the Massachusetts Probate and Family Court (the "state court") approved their joint petition for divorce and the Separation Agreement. Exhibit A to the Separation Agreement provided that the Debtor was to pay alimony to Pritchett in the initial amount of $2,300.00 a month. The payment amount was scheduled to be reduced annually, at an increased rate in the event of remarriage, and end after five years. The Separation Agreement provided for the following late payment penalty:

> All alimony payments shall be due in funds available to the Wife [Pritchett] on or before the first of each month, and shall be subject to a late payment penalty in the amount of $50.00 for each day after the first of each month upon which they are received by or become available to the Wife [Pritchett].

The Debtor's obligation to pay alimony and the late payment penalty remained in effect during the five year period even if he died during that time. To that end, the Debtor was required to purchase a five-year term life insurance policy in the amount of $125,000.00 for Pritchett's benefit, transfer the policy to her and reimburse her for the premium. The Separation Agreement further provided that alimony and late payment penalty payments were tax deductible by the Debtor and were considered taxable income to Pritchett. The Debtor waived his right to alimony from Pritchett "in view of [his] current income and financial condition as depicted on his [financial statement]." Except as provided in the Separation Agreement, both parties waived "all claims to the receipt of alimony, past, present, and future from the other."

The Debtor and Pritchett owned properties in Massachusetts, New Hampshire, and Texas. The Separation Agreement

recited that the parties believed there was no equity in the Massachusetts and New Hampshire properties, and that they agreed to allow the properties to be sold at foreclosure without contest. The Debtor agreed to indemnify Pritchett with respect to any liability arising from the properties. The Separation Agreement provided for the Debtor to convey to Pritchett his interest in the Texas property subject to a note and deed of trust, for Pritchett to indemnify the Debtor from liability on the note, and for the Debtor to have the right to make payments on the note and deed of trust and to deduct the note payments from the alimony payments, if Pritchett fell into arrears and the Debtor had made all alimony payments to Pritchett in a timely manner.

The Separation Agreement further provided that the Debtor was responsible for all debt incurred by either party prior to the date of the Agreement. Lastly, the Separation Agreement provided that if either party breached any of its terms and continued to be in default after written notice, the party in default was required to pay the reasonable attorneys' fees and expenses incurred by the other party with respect to the breach.

Subsequent to the approval of the Separation Agreement, the Debtor almost immediately fell into arrears on his alimony payments to Pritchett. In 1998, the state court approved a modification of the Separation Agreement as agreed upon by the Debtor and Pritchett. The Modified Agreement provided that the Debtor would pay Pritchett a total amount of $42,373.00 in alimony at a monthly rate of $500.00 beginning on September 1, 1998 until paid in full. All other provisions of the 1995 Separation Agreement remained in effect.

The Debtor failed to comply with the terms of the Modified Agreement, and two contempt orders were entered against him. In 2005, Pritchett brought another contempt action against the Debtor. The state court entered judgment finding that the Debtor was not guilty of contempt because Pritchett had failed to prove that the Debtor's noncompliance was willful. The court further found that the Debtor had paid his support obligations on a monthly basis, but that the payments were not timely and, therefore, had triggered the $50 per day penalty set forth in the Separation Agreement. The court viewed the action as a breach of contract and not as a willful violation of a court order and entered judgment against the Debtor in the amount of $75,010.00. The court noted "that the parties clearly anticipated an uphill battle relative to the payment of alimony as proposed in the original agreement at the time of their divorce." The court declined to "assess attorneys' fees and convenience costs." The court further stated that "[t]he [Debtor] owes $41,000 in child support to DOR [Department of Revenue], among other debts."

The Debtor failed to satisfy the judgment, and in 2006 Pritchett brought an action in New Hampshire state court for enforcement of the judgment. The parties ultimately reached an agreement, pursuant to which the New Hampshire state court entered a judgment against the Debtor in the amount of $75,010.00 plus interest and costs. In July 2007, Pritchett obtained and recorded an ex parte real estate attachment against the Debtor's residence in the amount of $89,410.00.

## B. The Bankruptcy

The Debtor filed a chapter 13 petition in October 2007. Schedule A of the Debtor's petition lists one real property valued at $349,000.00 with a secured claim of $407,011.99. Schedule D, Secured Claims, lists a tax lien in the amount of $2,910.00;

a mortgage in the amount of $325,776.69; and Pritchett's claim described as "Alimony" in the amount of $78,325.30, with a secured portion of $58,011.00. On Schedule C, Property Claimed as Exempt, the Debtor claimed a homestead exemption in the amount of $100,000.00 in the real property.

Pritchett filed a proof of claim for a secured priority claim in the amount of $81,392.04, characterizing the claim as "Alimony–Priority Claim Under 11 U.S.C. Sec. 507(a)(1)(A)" secured by real estate valued at $349,000.00 pursuant to Schedule A of the Debtor's petition. Pritchett attached to the proof of claim the Separation Agreement, related state court orders and the writ of attachment.

The Debtor filed an objection to Pritchett's claim and a motion to avoid her lien. He asserted that because the entirety of Pritchett's claim consisted of late payment penalties with interest and costs and because there was no arrearage in the monthly alimony payments themselves, the claim was not a domestic support obligation as defined by § 101(14A). The Debtor contended Pritchett's claim was not a domestic support obligation, that her lien should be avoided, that the claim was not entitled to priority status and had the status of a general unsecured claim. According to the Debtor, the Separation Agreement reflected the parties' intent that the late payment penalty was punitive rather than compensatory in nature. The Debtor maintained that the $50.00 per day late payment penalty would result in an annual simple interest rate of 912.5%. Based upon the language of the Separation Agreement and contempt order, as well as the extraordinarily high amount of the per day penalty, the Debtor asserted that the

late payment penalty was intended to coerce prompt payment of the alimony rather than compensate Pritchett for the loss of use of such payments in the event of delay.

In his motion to avoid lien, the Debtor asserted that application of the test set forth in § 522(f)(2) resulted in avoidance of Pritchett's lien because it impaired the Debtor's homestead exemption in an amount that exceeded the entire value of Pritchett's lien. The Debtor conceded, however, that if Pritchett's claim was indeed a domestic support obligation, the lien could not be avoided. Pritchett objected to the motion to avoid lien, maintaining that § 523(a)(5) prohibits the Debtor from avoiding her lien because the debt it secures is, in fact, a domestic support obligation entitled to priority pursuant to § 507(a)(1)(A).

The bankruptcy court held a hearing on the matter.[1] At the conclusion of the hearing, the court dictated its decision on the record. The bankruptcy court determined, after considering the Separation Agreement and the related state court orders, that an evidentiary hearing was not necessary to decide if the late payment penalty was a domestic support obligation. The court rejected the Debtor's argument that the $50 per day penalty was meant solely to be punitive, noting that the state court treated the $75,010.00 judgment against the Debtor as a breach of the court-approved stipulation rather than as a contempt citation, specifically finding that the payments were late because of the Debtor's inability to pay, and declining to impose attorneys' fees against the Debtor. The bankruptcy court concluded that, although it was "a close call"

---

1. The bankruptcy court held a nonevidentiary hearing. At oral argument in this appeal, counsel for both parties stated on the record that they did not seek an evidentiary hearing in these contested matters.

I think it looks, smells, and feels too much like attorneys' fees collecting alimony and support payments, which have historically throughout this Circuit and this District been treated as in the same nature, so I think they acquire that nature despite the fact of the label 'penalty.' And I'm a little troubled by the fact it's not a percentage, but I think it was part of the bargain, and I think that's how it got caught up, and I think the fact that it's deductible—the fact that it's treated the same for tax purposes by agreement is crucial, and I think the way the Judge enforcing it treated it, he said 'Look, there's no contempt here. This is just a breach of contract claim,' and that was part of the alimony contract. It wasn't part of the property settlement contract or the other parts of the divorce decree.

The bankruptcy court entered an order denying the Debtor's motion to avoid Pritchett's lien and overruling his objection to Pritchett's claim. This appeal followed.

## JURISDICTION

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted).

■ An order allowing a claim is final where all aspects of the claim have been determined. *Perry v. First Citizens Fed. Credit Union (In re Perry)*, 391 F.3d 282, 285 (1st Cir.2004). Here, the order over-

ruling the objection is a final order as it had the effect of allowing the claim as a secured priority claim in the amount filed. An order denying a motion to avoid a lien is also a final, appealable order. *Snyder v. Rockland Trust Co. (In re Snyder)*, 279 B.R. 1, 2 (1st Cir. BAP 2002).

## STANDARD OF REVIEW

■ We review the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *Werthen v. Werthen (In re Werthen)*, 329 F.3d 269, 272 (1st Cir.2003); *T.I. Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir.1994).

■ A bankruptcy court's decision whether certain types of obligation qualify as support within the meaning of the Bankruptcy Code implicates questions of law. *Cowell v. Hale (In re Hale )*, 289 B.R. 788, 791 (1st Cir. BAP 2003). A bankruptcy court's conclusion that a lien cannot be avoided is reviewed *de novo*. *Nelson v. Scala (In re Nelson)*, 229 B.R. 262, 264 (D.Me.1998), *aff'd*, 192 F.3d 32 (1st Cir.1999). Since the factual basis for the bankruptcy court's conclusion is not contested, "our review is largely *de novo*." *Richmond v. New Hampshire Supreme Court Comm. on Prof'l Conduct*, 542 F.3d 913, 917 (1st Cir.2008).

## DISCUSSION

The outcome of this appeal rests on two legal precepts. First, an allowed claim for a domestic support obligation is a priority claim entitled to payment in full under a chapter 13 plan. 11 U.S.C. § 507(a)(1); § 1322(a)(2). Second, a debtor may not avoid a lien that secures a debt for a domestic support obligation. 11 U.S.C. § 522(f)(1)(A).

A domestic support obligation is a debt that is (1) owed to a former spouse (2) in the nature of alimony, maintenance or support, without regard to whether such debt is expressly so designated, (3) by application of a Separation Agreement, divorce decree or court order, and (4) not assigned to a nongovernmental agency. 11 U.S.C. § 101(14A). Here, the Debtor disputes only whether the debt is in the nature of support.

 Whether a claim is in the nature of support is a question of federal bankruptcy law. *In re Werthen*, 329 F.3d at 272–73; *In re Hale*, 289 B.R. at 791. In broad terms, support payments "provide for the upkeep of the recipient spouse [...] while other divisions or payments serve other purposes." *In re Werthen*, 329 F.3d at 273.[2] A state court's denomination of an award as something other than alimony, maintenance or support is not controlling. *Id.*; 11 U.S.C. § 101(14A). Instead, the critical issue is whether the state court which entered the divorce decree and the parties who entered into a divorce agreement intended the award to serve as support or as "something else," such as a division of jointly owned property. *In re Werthen*, 329 F.3d at 272–73. How the award in fact functioned does not necessarily reflect how it was intended to function, although it may be evidence of the court's or the parties' intent. *In re Hale*, 289 B.R. at 791 n. 4.

 In determining whether a property award is intended to function as support, courts examine a range of factors, including the language used by the state court and whether the property award appears to "assuage need" as discerned from the structure of the award and the financial circumstances of the recipients at the time of the Agreement. *In re Werthen*, 329 F.3d at 273. The examination to determine whether the debt is a domestic support obligation is the same as a § 523(a)(5) inquiry as they both seek to determine if the obligation is in the nature of "alimony, maintenance or support." The now defined term domestic support obligation is derived from the provision in former § 523(a)(5), which excepts from discharge debts for alimony, maintenance, or support. *In re Rose*, 2008 WL 4205364 (Bankr.E.D.Tenn. Sept.10, 2008) (citing *Wisconsin Dept. of Workforce Dev. v. Ratliff*, 390 B.R. 607, 612 (E.D.Wis.2008)).[3] We must therefore examine the circumstances that existed at the time the obligation was created; current circumstances are not relevant. *Werthen v. Werthen (In re Werthen)*, 282 B.R. 553, 556 (1st Cir. BAP 2002), *aff'd*, 329 F.3d 269 (1st Cir. 2003).

 In *Soforenko v. Soforenko (In re Soforenko)*, 203 B.R. 853, 859 (Bankr. D.Mass.1997), the court thoroughly described the variety of multi-factor tests used in the First Circuit to discern intent when determining whether an obligation is in the nature of support. The court adopted "the approach developed by the Third Circuit in *Gianakas*." *Id.* (citing *In re Gianakas*, 917 F.2d 759 (3d Cir.1990)). The *Gianakas* court identified and "examined three principal indicators of intent:

---

**2.** The standard for whether an obligation is in the nature of support did not change under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See Wisconsin Dept. of Workforce Dev. v. Ratliff*, 390 B.R. 607, 612 (E.D.Wis.2008).

**3.** The definition of domestic support obligation in § 101(14A), by adding "without regard to whether such debt is expressly so designated" validates judicial decisions under former § 523(a)(5) which hold that labels do not control the actual nature of the designation. William Houston Brown, *Bankruptcy and Domestic Relations Manual*, § 6.6 (2007).

(1) the language and substance of the state court's order; (2) the parties' financial circumstances at the time of the order; and (3) the function served by the obligation at the time of the order." *Id.* The Panel in *In re Hale,* 289 B.R. at 797 n. 24, declined to adopt one of the various multi-factor tests employed by courts in determining whether a debt is in the nature of alimony, maintenance, or support. We, likewise, decline to identify any specific set of factors as determining intent. As in all fact intensive queries, the critical factors depend on the totality of circumstances of a particular case. Notwithstanding, the three principal factors in *Gianakas* are a good summary of applicable circumstances and a guideline in this case since there was no evidence presented by the parties.

Courts have found two types of awards to be in the nature of support even though they were not labeled as such by the state court: obligations resulting from a failure to make timely alimony payments, and property awards intended to function as support. *See In re Werthen,* 329 F.3d at 274; *Macy v. Macy,* 114 F.3d 1, 2 (1st Cir.1997). Obligations resulting from a failure to make timely alimony payments include attorneys' fees incurred by the recipient spouse in enforcing the alimony obligation and interest that accrues on the underlying debt. 11 U.S.C. § 101(14A); *In re Macy,* 114 F.3d at 2. These obligations are compensatory in that they serve only to make the recipient spouse whole where costs have been incurred in enforcing the alimony obligation, namely the cost of retaining services and the cost of the lost use of the funds. *See id.*

■ In this case, the debt that arose from the late payment penalties does not fit squarely into either category of interest or attorneys' fees. It is different from interest and attorneys' fees in that it did not serve a simple compensatory function.

At $50 a day, the penalty accrued to $1,500 after thirty days, and cannot reasonably be construed as interest meant to compensate Pritchett for her loss of the use of the funds when one considers that the monthly alimony obligation began at $2,300 and then ratcheted down annually. Although the Separation Agreement did not provide for interest on late paid alimony, the late payment penalty is so unreasonably high that it cannot be meant or intended to function as compensation to Pritchett for lost use of the funds in the event the payment was late. The late payment penalty is also unlike attorneys' fees in the sense that it does not appear that it was intended to compensate Pritchett for expenses resulting from efforts undertaken to enforce the Separation Agreement. Also, the Separation Agreement did provide specifically for attorneys' fees and costs to the party pursuing a remedy for a breach of the Agreement. In fact, the state court declined to assess attorneys' fees and costs, which were included in the Agreement as compensable in case of a breach in the support obligation. Therefore, the bankruptcy court's statement that "... it looks, smells, and feels too much like attorneys' fees [for] collecting alimony and support payments ..." is not supported by the Separation Agreement and the state court's order.

The bankruptcy court concluded that the state court's treatment of the obligation as a breach of contract claim supported an interpretation that the obligation was part of the alimony contract and in the nature of alimony. However, the state court also found that the Debtor owed $41,000 in child support to the DOR. There is no record that the Debtor owed or had to pay child support. Whether the court was referring to the alimony owed to Pritchett cannot be determined from the documents

before the Panel.[4] What is of relevance is that the state court differentiated the amounts owed in penalties from the amounts owed for support.

It can be inferred from the undisputed facts that, at the time the Separation Agreement was approved, Pritchett was in a weaker financial position than the Debtor. The Debtor waived his right to alimony and assumed responsibility for all of the marital debt including two properties in foreclosure "[i]n view of the Husband's current income and financial condition as depicted on his current Rule 401 Financial Statement...." However, both parties also waived "all claims to the receipt of alimony, past, present, and future from each other" except as otherwise provided in the Agreement. In the absence of evidence regarding the financial conditions of each party, the court cannot conclude that an economic imbalance, to the extent it may have existed, warrants a finding that the late payment penalty fee was meant to be in the nature of support.

The Separation Agreement was structured in order that the only property of significance awarded to Pritchett was the Texas property, which was burdened with a mortgage for which Pritchett was responsible. As such, she received no property award that would serve as a separate means of support. The alimony payments were her sole means of support under the Separation Agreement.

The overall tax consequences of the monies paid and received as alimony constitute a factor weighing in favor of consideration of the penalty payment as support. However, given the amount of the penalty, the penalty fee component could not have been intended to enable Pritchett to maintain a basic or reasonable livelihood, even if in fact it functioned as a means to ensure that the alimony payment actually constituting support was made. Based upon the undisputed facts, the only reasonable conclusion is that the exorbitant[5] late payment penalty was intended to penalize the Debtor for not making the payment within the time period agreed upon, and to ensure that he timely paid the alimony which was Pritchett's only means of support. The penalty was, therefore, intended to ensure that Pritchett's need was assuaged, though it was not itself intended to assuage the need.[6] The late payment penalty cannot be considered in the nature of alimony or support.

Having found that the late payment penalty is not intended to be in the nature of support and is, thus, not a domestic support obligation as defined by 11 U.S.C. § 101(14A), it follows that Pritchett's lien is avoidable under 11 U.S.C. § 522(f) because it impairs Debtor's homestead exemption, and is not excepted by

---

4. The parties stipulated in the contempt action before the state court that the amounts owed for alimony are: arrears of $18,813, prospective alimony of $20,000, for a subtotal of $38,813. The parties also stipulated the payment of health insurance premiums in the amount of $3,000 and life insurance premiums totaling $560. The Debtor was to pay Pritchett the amount of $42,373 at a rate of $500 per month.

5. *But see Crawforth v. Ajax Enter., LLC (In re Pheasant Cove, LLC),* 2008 WL 187529 (Bankr.D.Idaho Jan.18, 2008), wherein the court rejected that the default and interest rate were unreasonable in light of a multimillion obligation, and distinguished *In re White,* 88 B.R. 498 (Bankr.D.Mass.1988), which found that a 48% default rate was a penalty to coerce debtors into prompt payment.

6. The Panel is not holding that the Separation Agreement or any of its parts is invalid. The decision only finds that the late payment penalty was not intended to be in the nature of support of Pritchett's needs.

724

§ 523(a)(5) and that the claim is a general unsecured claim not entitled to priority status.

## CONCLUSION

In view of the foregoing, the bankruptcy court's order overruling the Debtor's objection to Pritchett's proof of claim and denying the motion to avoid Pritchett's lien is hereby **REVERSED.**